UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MELVIN E. BRIMAGE, | ) |
| | ) |
| Plaintiff, | ) No. 15 cv 4970 |
| | ) |
| v. | ) Judge John Z. Lee |
| | ) Magistrate Judge Susan E. Cox |
| TERRENCE FOWLER, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

For the reasons discussed below, Plaintiff's Motion to Compel (Dkt. 84) is denied without prejudice.

**I. Factual Background**

In his *pro se* amended complaint,[1] Plaintiff Melvin E. Brimage ("Plaintiff") alleges that Defendants violated his Fourth Amendment rights by improperly executing a search warrant on his residence at 6636 N. Francisco Avenue in Chicago (Plaintiff's residence), and committing judicial deception by omitting material information in the affidavit submitted by Defendant Terrence Fowler ("Fowler") to support the aforementioned search warrant.[2] (Dkt. 39 at 5-7.) Only the second claim (*i.e.*, the claim of judicial deception against Fowler and another Defendant, Zoe Batzer) is relevant to the motion currently before the Court.

On January 19, 2013, Cook County Circuit Court Judge Nicholas Ford issued a search warrant, finding that there was probable cause to search Plaintiff and his residence, and to seize a "[s]ilver colored medium sized semi-automatic handgun with a black colored grip, to wit a firearm in the possession of a convicted Felon and any documents showing residency, and any other

---

[1] After Plaintiff filed his amended complaint, Judge Lee recruited counsel to represent Plaintiff. (Dkt. 72.)

[2] The search warrant and affidavit both list the relevant address as 6136 N. Francisco Avenue, whereas Plaintiff's complaint alleges that he lived at 6636 N. Francisco Avenue. The discrepancy is not relevant to the motion currently before the Court.

firearms or illegal contraband on the premises." (Dkt. 86-1.) The search warrant was based on a Complaint for Search Warrant submitted by Fowler ("the Affidavit"). In the Affidavit, Fowler averred that he had several conversations with a confidential informant called J. Doe, who wished to remain confidential for "reasons of personal safety." (Dkt. 86-1.) According to Fowler, J. Doe claimed to have seen a silver semi-automatic handgun with a black colored grip at Plaintiff's residence on multiple occasions. The most recent occasion had occurred on January 2, 2013, when J. Doe said that Plaintiff had retrieved the gun from a closet located next to the front door of the residence, showed it to J. Doe, and then placed it back in the closet. (Dkt. 86-1.) J. Doe also told Fowler that she had been in Plaintiff's residence on more than one occasion, and that on each occasion, Plaintiff removed the gun from the aforementioned closet and then returned it to the same place. (Dkt. 86-1.) Fowler reported that J. Doe described Plaintiff to him, had known Plaintiff for many years, and identified Plaintiff in an ICLEAR photograph. (Dkt. 86-1.) The Affidavit also states that J. Doe's criminal history had been presented to Judge Ford, and that J. Doe "was presented to [Judge Ford], sworn to the contents of the complaint, and was made available for questioning." (Dkt. 86-1.)

Plaintiff contends that J. Doe is his daughter, Monique Brimage Robinski. Plaintiff alleges that Fowler was aware of additional information that would undermine the credibility and reliability of Plaintiff's daughter, but that Fowler omitted that information from the Affidavit. Specifically, Plaintiff alleges that Fowler withheld evidence regarding J. Doe's "[a]nimus and bias" toward Plaintiff. (Dkt. 39 at 6.) In his motion, Plaintiff states that he is "convinced that Fowler handled a domestic abuse complaint filed several weeks earlier by [Plaintiff's] daughter against Plaintiff," and failed to disclose the strained family relationship to Judge Ford. Plaintiff asserts that this omission constitutes a reckless or intentional omission of material information by Fowler, which led to a warrant being issued that was not based on probable cause, thereby

violating Plaintiff's right to be free from unreasonable searches and seizures pursuant to the Fourth Amendment.

Of course, a major obstacle to Plaintiff proving his claim is that he cannot be certain that Fowler relied on information that Plaintiff's daughter supplied, because the Affidavit only identifies the confidential informant as J. Doe. As such, Plaintiff has issued several interrogatories aimed at confirming his suspicion that J. Doe is his daughter. The relevant interrogatories are as follows:

> <u>Interrogatory No. 3:</u> Identify each and every witness who provided information that formed the basis (in whole or in part) for the search warrant for 6136 N. Franco, Chicago, Illinois (which was executed on or about January 20, 2013).
>
> <u>Interrogatory No. 6</u>: Identify any and all individuals who were present during some or all of the proceeding that led to the judicial official approving the search warrant (Bates numbers FCRL 000001 to FCRL 000003) for 6136 N. Francisco, Chicago, Illinois (which was executed on or about January 20, 2013), including but not limited to the name and title of the judicial official, and any witnesses who were present for the purpose of presenting information to the judicial official.
>
> <u>Interrogatory No. 7</u>: Did any Defendant communicate with Monique Brimage Robinski before January 20, 2013? If the answer is "yes," describe for each and every communication: (a) the Defendant or Defendants who communicated with her; (b) the date and time when the communication(s) occurred; (c) the methodology of the communication (e.g., in-person verbal conversation, electronic mail, telephone, etc.); (d) the location of the Defendant(s) and Monique Brimage Robinski when the communication(s) occurred; and (e) a summary of what was discussed between the Defendant(s) and Monique Brimage Robinski during the communication(s).
>
> <u>Interrogatory No. 11</u>: Identify the "John Doe" mentioned in the Search.

Most of the Defendants in the suit responded to these interrogatories by claiming that they lacked sufficient knowledge to respond or did not have any communications with Plaintiff's daughter. However, Defendants Fowler and Batzer invoked the informer's privilege and provided

limited responses to the interrogatories subject to that privilege. Plaintiff then filed the instant motion, seeking an order compelling Defendants Batzer and Fowler to respond to above-referenced interrogatories in full. That motion has now been fully briefed and is ripe for disposition.

## II. Discussion

### A. Standing

First, Plaintiff argues that Defendants Fowler and Batzer lack standing to invoke the informer's privilege. To support this argument, Plaintiff notes that Defendants Fowler and Batzer are sued in their individual capacities, whereas most cases discussing the informer's privilege state that it is the government's privilege. According to Plaintiff, only a government entity, such as the City of Chicago, would have standing to invoke the informer's privilege. The Court believes this is too restrictive, and Plaintiff has cited no case where standing was limited in such a way.[3]

While it is true the government has standing to claim the privilege, it is also true that any plaintiff bringing a claim pursuant to 42 U.S.C. § 1983 must prove that the defendant is a person acting under color of law (*i.e.*, that the defendant was acting as an agent of the government). *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress"). Being

---

[3] The cases cited by Plaintiff are easily distinguishable. In *Sanders v. Canal Ins. Co.*, 924 F. Supp. 107 (D. Or. 1996), a private insurance company's attempt to invoke the privilege was rejected. A private insurance company, unlike the police officer defendants in this case, does not act under color of state law and is not way a government actor. In *Clavir v. United States*, 84 F.R.D. 612 (S.D.N.Y. 1979), several FBI agents gave interviews to the Department of Justice investigation regarding unauthorized investigative techniques by other FBI agents; when those interviewees attempted to block the production of memoranda describing their interviews, the court rejected their argument. However, that decision only stands for the idea that the informant does not have standing to invoke the informer's privilege, which is not the case here. It does not hold that police officers sued in their individual capacity lack standing to do so.

sued in an individual capacity does not mean that a defendant is being sued for actions they took as private citizens. If Plaintiff is arguing otherwise, his claims would all fail because Defendants would not be acting under color of state law.

Moreover, Defendants are sued in their individual capacities and not their official capacities primarily because suing them in their official capacities would raise a host of sovereign immunity issues that would likely also defeat Plaintiff's claims. *See Zboralski v. Monahan*, 446 F. Supp. 2d 879, 883 (N.D. Ill. 2006) ("Defendant Martin, as a participant in the allegedly unlawful patdown searches, can be held liable in his individual capacity. Officials of the state, however, cannot be sued in their official capacities under § 1983. Because a 'suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office' suing a state official in his or her official capacity raises Eleventh Amendment sovereign immunity and § 1983 definition problems") (citations omitted); *see also Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989). Additionally, other courts in this district have allowed defendant sued in their individual capacity to raise the informer's privilege. *See, e.g.*, *Grayer v. Greenwood*, 2007 WL 1531809, at *1-2 (N.D. Ill. May 24, 2007); *Warlick v. Cross*, 1989 WL 51400, at *1 (N.D. Ill May 11, 1989). Therefore, while Defendants Fowler and Batzer are being sued in their individual capacities, they are being sued for actions they took as government actors (namely, as police officers), and have standing to invoke the informer's privilege.

    **B.**    **Informer's Privilege**

The Supreme Court has recognized a limited privilege of law enforcement to withhold the identity of confidential informants from discovery. *Roviaro v. United States*, 353 U.S. 53, 60 (1957). "The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement" by preserving the anonymity of citizens who come forward with information about criminal activity, thereby "encourag[ing] them to perform that obligation." *Id.*

at 59. However, the informer's privilege is qualified, not absolute. As such, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. There is no bright line rule for determining when the privilege applies. *Id.* at 62. Instead, courts are to balance "the public interest in protecting the flow of information against the individual's right to prepare his [case]," by considering "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* The informer's privilege applies in both criminal and civil contexts, but the Seventh Circuit has noted that the privilege "is arguably greater" in the civil context "since not all constitutional guarantees which inure to criminal defendants are similarly available to civil defendants." *Dole v. Local 1942, IBEW*, 870 F.2d 368, 372 (7th Cir. 1989).

Search warrants are invalid where police officers provide the issuing court with false, material information in order to secure the warrant. *United States v. McMurtrey*, 704 F.3d 502, 504 (7th Cir. 2013). In the Seventh Circuit, evidence seized pursuant to a warrant must be suppressed where: 1) the affidavit supporting the warrant contains false statements or misleading omissions, 2) the false statement or omissions were made deliberately or with reckless disregard for the truth, and 3) probable cause would not have existed with the false statements and/or omissions (*i.e.*, the omissions or misrepresentations were material). *See United States v. Williams*, 718 F.3d 644, 647 (7th Cir. 2013) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)). The test articulated in *Franks* also applies to Fourth Amendment claims brought pursuant to 42 U.S.C. § 1983. *See, e.g.*, *Molina v. Cooper*, 325 F.3d 963, 968 (7th Cir. 2003). Regarding the third prong, the Court must determine whether a hypothetical affidavit with the false statements removed or the omitted information added would still support a probable cause finding. *See United v. Spears*, 673

6

F.3d 598, 604 (7th Cir. 2012); *see also Betker v. Gomez*, 692 F.3d 861-62 (7th Cir. 2012) ("Our analysis is fairly straightforward. We eliminate the alleged false statements, incorporate any allegedly omitted facts, and then evaluate whether the resulting 'hypothetical' affidavit would establish probable cause").

At this stage of the litigation, the Court does not believe that confirming the identity of J. Doe as Plaintiff's daughter is necessary to the fair litigation of his case. Fundamentally, the Court harbors significant doubts about the viability of Plaintiff's Fourth Amendment claim based on judicial deception. Even assuming that Plaintiff is correct that the Plaintiff's daughter was the confidential informant, the Affidavit contains misleading omissions, and that Fowler made those omissions with reckless disregard for the truth, the Court does not believe that the omissions were material. This Court performs criminal duty four weeks every year and reviews scores of search warrants as part of that process. Although, admittedly, most prosecutors and federal agents include information that might weigh on the credibility of confidential informants in their search warrant applications, that information is rarely relevant to the substantive probable cause finding. Many, if not most, confidential informants have a motive to lie – payment in exchange for information, personal grievances against the target of the warrant, cooperation in the hopes of lighter sentencing in a related criminal matter, etc. – but that motive does not mean that probable cause is necessarily lacking. This is especially true where, as here, the confidential informant claims to have firsthand knowledge of the crime, provided detailed descriptions of the weapon, and its location, the police officer took steps to independently verify some of the information provided by the confidential informant, and the confidential informant was made available for questioning before the judge issuing the search warrant. *See United States v. Lloyd*, 71 F.3d 1256, 1263 (7th Cir. 1995). A hypothetical affidavit that included the information regarding Plaintiff's estranged relationship with his daughter and her potential motivations to lie would almost

7

certainly not lead to a different result nor cause a neutral judicial officer to find that there was not probable cause to issue the search warrant at issue in this case.

Of course, that particular question is not in front of this Court, and the Court lacks the jurisdiction to make that decision, but it does factor into the balancing test articulated by the Supreme Court in *Roviaro*. The Court cannot say that disclosing the identity of J. Doe is "essential to the fair determination" of Plaintiff's claim because, as articulated above, the Court believes that this cause of action may likely be dismissed or otherwise disposed on summary judgment without determining whether the confidential information is Plaintiff's daughter. And, more importantly, most of the claim can be determined without disclosing that information, by assuming that Plaintiff's allegations are completely true and drawing all inferences in his favor and determining the cause of action as a matter of law. In other words, the Plaintiff can go forward with his claim through summary judgment without knowing whether his daughter was J. Doe, and the Court believes that it is the most sensible course of action in this case. If the district judge were to disagree with this Court and eventually determine that the credibility issues Plaintiff is raising would have been material to Judge Ford's probable cause finding, discovery can be reopened for a limited purpose to confirm J. Doe's identity as Plaintiff's daughter and take any short deposition testimony that will be necessary as a result of that confirmation. In other words, the Court does not believe that positively identifying J. Doe as Plaintiff's daughter is necessary to litigating his cause of action at this time. To the extent that upholding the privilege would impinge on Plaintiff's rights, the Court believes that the public interest in encouraging citizens to provide the police with information about illegal gun possession – particularly in a city with a well-publicized gun violence problem – outweighs Plaintiff's need for that information. As such, the Court denies the request without prejudice. The Court believes that Defendants Fowler and Batzer have adequately responded to Plaintiff's interrogatories, and Plaintiff's motion is denied

without prejudice.

### III. Conclusion

For the reasons discussed above, Plaintiff's Motion to Compel (Dkt. 84) is denied without prejudice. Status hearing remains set for 5/8/2019 at 9:30 a.m. remains set.

**DATED:** 4/16/2019

_____
**U.S. Magistrate Judge, Susan E. Cox**